Melvin E. JONES, Petitioner,

v.

Barry GAITHER, Warden, Respondent.

Civ. A. No. C86–67A.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 8, 1986.

Melvin E. Jones, pro se.

Susan E. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent.

## ORDER

SHOOB, District Judge.

Presently before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The Court has read and considered the Magistrate's Report and Recommendation of April 3, 1986, and petitioner's objections to the Report and Recommendation. The Court ADOPTS the Magistrate's Report and Recommendation of April 3, 1986 as the order of the Court and DENIES the petition for a writ of habeas corpus. Because the Magistrate's Report and Recommendation is particularly well-reasoned, the Court has included it as an appendix to this order.

APPENDIX

MAGISTRATE'S REPORT AND RECOMMENDATION UPON PETITION BY STATE PRISONER FOR FEDERAL HABEAS CORPUS RELIEF

April 3, 1986

ALLEN L. CHANCEY, Jr., United States Magistrate.

Melvin E. Jones, a state prisoner currently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is challenging the validity of his February 4, 1980, conviction by a jury in the Superior Court of Fulton County, Georgia, on one count of rape for which he received a 20-year sentence and one count of robbery for which he received a 20-year concurrent sentence. Petitioner's convictions and sentences were affirmed by the Georgia Court of Appeals on his direct appeal. *Jones v. State*, 159 Ga.App. 845, 285 S.E.2d 584 (1981). Petitioner subsequently filed a state petition for a writ of habeas corpus in the Superior Court of Baldwin County, Georgia, and received an evidentiary hearing on February 12, 1985. The petition was denied on April 25, 1985, and the Supreme Court of Georgia denied his application for a certificate of probable cause to appeal on September 3, 1985.

In the instant petition, the petitioner raises the following grounds which he claims entitle him to relief:

(1) The trial court's charge on intent was unconstitutionally burden-shifting;

(2) The trial court erred in failing to charge upon written request from the defendant of the offense of theft by taking;

(3) The trial court erred in failing to declare a mistrial when a state's witness put the petitioner's character into evidence;

(4) The trial court erred in overruling a motion for a mistrial based on a juror's viewing of the petitioner in handcuffs during trial;

(5) The trial court erred in denying a new trial on general grounds;

(6) Prosecutorial misconduct;

(7) The trial court erred in allowing into evidence petitioner's divorce petition;

(8) The trial court erred in admitting evidence seized pursuant to an unconstitutional search and seizure of petitioner's house; and

(9) Ineffective assistance of counsel at trial.

All of petitioner's grounds were raised either in his direct appeal or state habeas and therefore are exhausted.

The matter is presently before the Court on the petition, respondent's answer-response, briefs of the parties, and copies of the records and proceedings from the petitioner's state habeas corpus, which includes the record of proceedings from petitioner's trial and appeal. (Resp. Ex. Nos.1–5). The Magistrate has made a careful review of the record and finds that it contains sufficient facts upon which the issues under consideration may be properly resolved and that the petitioner was afforded a full and fair hearing in the state courts. Therefore, no further evidentiary hearing is required upon the issues. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Hance v. Zant*, 696 F.2d 940 (11th Cir.), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983).

BURDEN-SHIFTING JURY CHARGE

In ground 1, the petitioner contends that the trial court gave a burden-shifting instruction on intent which relieved the state from having to prove beyond a reasonable doubt each and every element of the offenses charged. The trial court charged the jury as follows:

I charge you that in every criminal prosecution, criminal intent is an essential ingredient, and *I charge you that every person is presumed to be of sound mind and discretion, but this presumption may be rebutted. I charge you that you may infer that the acts of a person of sound mind and discretion are the product of his will, and you*

*may infer that a person of sound mind and discretion intends the natural and probable consequences of his acts.* (emphasis added)

Now, whether or not you make any such inference is a matter solely within the discretion of the jury. I charge you that intent is an essential element of any crime and must be proved by the state beyond a reasonable doubt.

I charge you that a person will not be presumed to act with criminal intent, but the trier of facts may find such intention or the absence thereof upon a consideration of the word, conduct, demeanor, motive, and other circumstances connected with the act or acts for which the accused is being tried.

Now, the code section I just read to you refers to the trier of the facts. I have already told you that you, the jury, are the trier of facts and therefore, it's a matter for you to determine. You may consider whether there was a criminal intention or the absence thereof upon a consideration of the words, conduct, demeanor, motive, and other circumstances connected with the act for which the accused is now being prosecuted.

(Tr. 632–33). Specifically, the petitioner claims that the underlined language created a mandatory, albeit, rebuttable presumption. Petitioner claims that the instruction as given shifted to the petitioner the burden of disproving an element of the offenses charged in violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

In *Sandstrom,* the Supreme Court considered an instruction in which the jury was told that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The Court held that this instruction violated the Fourteenth Amendment requirement that a state prove every element of a criminal offense beyond a reasonable doubt. *Id.* at 524, 99 S.Ct. at 2459. And recently, in the case of *Francis v. Franklin,* — U.S. —, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the

Court considered an instruction in which the jury was told that:

(1) the acts of a person of sound mind and discretion are presumed to be the product of a person's will, but the presumption may be rebutted; and

(2) a person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted.

*Id.* at 1968. The Court found that although the language used in this charge was different from that used in *Sandstrom* in that the jury was explicitly informed that the presumptions "may be rebutted," the distinction did not suffice to cure the infirmity in the charge. The Court found that the presumptions could reasonably be read as telling the jury that it was required to presume the requisite intent unless the defendant presented contrary evidence. *Id.* at 1972–73.

In contrast to the objected to jury charges in *Sandstrom* and *Franklin,* the jury charge in the instant case raises only permissible inferences on the question of intent. While conclusive and rebuttable presumptions may amount to an unconstitutional burden-shifting of an essential element of the charged offense, a permissible inference is a common evidentiary tool that allows, without requiring, the trier of fact to infer the existence of an elemental fact upon proof of a basic evidentiary fact. *Ulster County Court v. Allen,* 442 U.S. 140, 156–57, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). Thus, a permissive inference does not shift the burden of proof to a defendant because it leaves the trier of fact free to credit or reject the inference. *Id.* at 157, 99 S.Ct. at 2224–25.

The trial court in this case specifically stated that the jury "may *infer* that the acts of a person of sound mind and discretion are the product of his will, and ... may *infer* that a person of sound mind and discretion intends the natural and probable consequences of his acts." (Tr. 633) (emphasis added). The trial court also instructed the jury that the decision to make any such inference is a matter solely within

the discretion of the jury and that intent is an essential element of the crime and must be proved by the state beyond a reasonable doubt. (Tr. 633).

It is clear that when viewing the entire jury charge on intent, as is required by *Cupp v. Naughton*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), the charge did not shift the burden of proof on intent from the government to the defendant. Although this particular language has not been addressed by the Supreme Court, the Court in *Sandstrom* noted that the infirmity with presumptions is that the jury does not know that it has a choice on whether to apply the presumption "or that they might infer [a] conclusion; ... only that the law presumed it." *Sandstrom*, 442 U.S. at 515, 99 S.Ct. at 2454. The Court also stated in *Franklin* that "[a] permissive inference suggests to the jury a possible conclusion to be drawn if the state proves predicate facts, but does not require the jury to draw that conclusion." *Franklin*, 105 S.Ct. at 1971. Moreover, this circuit has interpreted similar jury charge language as creating only a permissible inference rather than shifting the burden of proof on intent from the government to the defendant. *Humphrey v. Boney*, 785 F.2d 1495 (11th Cir.1986). Other circuits that have addressed the same or similar language have also determined that such a jury charge does not impermissibly shift the burden of proof from the prosecution to the defendant. *See, Lannon v. Hogan*, 719 F.2d 518 (1st Cir.1983), *cert. denied*, 465 U.S. 1105, 104 S.Ct. 1606, 80 L.Ed.2d 136 (1984); *United States v. White*, 649 F.2d 779 (10th Cir.), *cert. denied*, 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 186 (1981); *United States v. Ross*, 626 F.2d 77 (9th Cir. 1980); *United States v. Davis*, 608 F.2d 698 (6th Cir.1979), *cert. denied*, 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 602 (1980); *United States v. Porter*, 581 F.2d 1312 (8th Cir.1978).

Petitioner also contends that the language "every person is presumed to be of sound mind and discretion, but this presumption may be rebutted," is unconstitutionally burdenshifting. As the Supreme Court stated in *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977), "[p]roof of the non-existence of all affirmative defenses has never been constitutionally required...." Indeed, the *Patterson* Court expressly declined to overrule *Leland v. Oregon*, 344 U.S. 848, 73 S.Ct. 4, 97 L.Ed. 659 (1952), which held that there was no violation of the due process clause in a state requiring a defendant to prove beyond a reasonable doubt that he was not sane at the time of the commission of the crime. *Patterson*, 432 U.S. at 204–5, 97 S.Ct. at 2324. Thus, including a rebuttable presumption that every person is presumed to be of sound mind and discretion is not a violation of an accused's constitutional rights. *Grace v. Hopper*, 566 F.2d 507, 510 (5th Cir.1978); *see also, United States ex rel Goddard v. Vaughn*, 614 F.2d 929 (3d Cir.), *cert. denied*, 449 U.S. 844, 101 S.Ct. 127, 66 L.Ed. 2d 53 (1980); *Duisen v. Wryick*, 566 F.2d 616 (8th Cir.1977).

Even if this Court were to find that the charge that every person is rebuttably presumed to be of sound mind and discretion were constitutionally infirm, the Court would still be compelled to find that it was harmless error. This circuit has held that where the instruction concerns an element of the crime not at issue in the trial, the impermissible burden-shifting instruction may be held harmless beyond a reasonable doubt. *Lakes v. Ford*, 779 F.2d 1578, 1583 (11th Cir.1986). As the petitioner's state of mind at the time of the rape and robbery was never an issue in his trial, this Court concludes that even if the petitioner were to show that the jury charge pertaining to sanity was impermissibly burden-shifting, it amounted to harmless error.

## REQUEST FOR THEFT BY TAKING JURY CHARGE

In ground 2, petitioner contends that the trial court erred in failing, upon written request, to charge the jury of the offense of theft by taking. On petitioner's direct appeal, the Georgia Court of Appeals

noted that the request was not to give the lesser included offense of theft by taking as defined in the Georgia Code, but rather a charge as to the penalty for theft by taking as provided in the Georgia Code. 159 Ga.App. at 849, 285 S.E.2d at 587–88. The Court of Appeals further found that even if the petitioner had made the proper request, there was no evidence of taking under lesser circumstances than those described by the victim. *Id.*

Although the defendant is entitled to an instruction on a lesser included offense in a capital case if a proper request is made and if there is some evidence which would justify conviction of the lesser offense. *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), this Circuit has never held that it is a constitutional error for a trial judge to deny a requested charge on a lesser included offense in non-capital cases. *Ester v. Estelle*, 609 F.2d 756 (5th Cir. 1980); *Bonner v. Henderson*, 517 F.2d 135 (5th Cir.1975).[1] Moreover, as the Georgia Court of Appeals pointed out, the jury charge request made to the trial court was not for theft by taking (*see* Georgia Code § 26–1802, now O.C.G.A. § 16–8–2), but rather the penalty for violation of theft by taking. (*See* Georgia Code § 26–1812(a), now O.C.G.A. § 16–8–12(a)). (*See*, Tr. 78). Thus, the appropriate request for a jury charge of the lesser included offense of theft by taking was never made to the trial court. The Magistrate concludes that this ground is without merit.

## CHARACTER EVIDENCE

In grounds 3 and 7, the petitioner contends that the trial court erred in allowing his character to be put in issue. In ground 3, the petitioner contends that Detective Tiedge's testimony pertaining to the petitioner's prison record and to his relationship with his ex-wife was irrelevant and prejudicial. The objected-to testimony was elicited by the petitioner's attorney during his cross-examination of Detective Tiedge about what information she had received from the petitioner's ex-wife concerning the relationship between the petitioner and his ex-wife. Detective Tiedge testified that:

> She stated to me that she had known or that she had been married to Mr. Jones for approximately six months, if I recall correctly, that she had corresponded with him previous to that time for four years while he was in prison, that through their letters that they fell in love and that when he was released from prison, that she married him; that during their marriage, she stated to me that he charged large sums of money on her credit card, he went through several large sums of money that she had given him, that during their relationship that he had beat her on several occasions, that she had left him several times due to his actions, and that she finally couldn't take any more, and so they became separated.

(Tr. 467–68). In considering this claim on his direct appeal, the Georgia Court of Appeals noted that the defense sought no relief and made no motion for mistrial following Detective Tiedge's testimony, but in fact caused this testimony to be given and even sought it. 159 Ga.App. at 848, 285 S.E.2d at 584.

In ground 7, the petitioner contends that the admission of his divorce petition into evidence erroneously placed his character into issue. Petitioner contends that admission of the divorce petition was irrelevant, immaterial, and prejudicial. Petitioner's state habeas court held that even assuming that the introduction of the divorce petition into evidence could be termed prejudicial, petitioner opened the door for the introduction of such evidence through the cross-examination of Detective Tiedge. The Court held that the cross-examination of Detective Tiedge pertained in part to petitioner's relationship with his ex-wife and the subse-

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981, unless and until overruled or modified by the Eleventh Circuit *en banc*.

quent divorce and therefore the petitioner placed this issue into evidence and before the jury. (Resp. Ex. No. 4 at 4).

Initially, the Magistrate notes that it is clear that the admission of evidence at trial is a matter within the trial judge's discretion, and his action will not provide a ground for habeas corpus relief unless the trial was thereby rendered fundamentally unfair and violative of due process rights. *DeBenedictis v. Wainwright*, 674 F.2d 841 (11th Cir.1982). Further, the prejudicial evidence objected to must be "material in the sense of a crucial, critical, highly significant factor." *Machin v. Wainwright*, 758 F.2d 1431, 1434 (11th Cir. 1985) (citation omitted). The petitioner bears the burden of showing that the admission of prejudicial evidence rendered his trial fundamentally unfair. *Hill v. Linahan*, 697 F.2d 1032, 1037, *reh. denied*, 701 F.2d 947 (11th Cir.1983).

In the instant case, it is clear that Detective Tiedge's testimony and admission into evidence of the petitioner's divorce petition did not render his trial fundamentally unfair. The objected-to testimony was specifically elicited by the petitioner's attorney and the admission of the petitioner's divorce petition was in response to the petitioner's testimony that he was unsure as to whether he was divorced at the time of the trial. (Tr. 560–63). Moreover, the objected-to evidence is not material in the sense of a crucial, critical, highly significant factor. It is highly unlikely that the reference to petitioner's prison record, without more, and to petitioner's relationship with his ex-wife, affected the outcome of his trial.

## JUROR'S VIEWING OF PETITIONER IN HANDCUFFS DURING TRIAL

In ground 4, the petitioner contends that the trial court erred in overruling a motion for a mistrial based on a juror's viewing of the petitioner in handcuffs during trial. The petitioner contends that he was prejudiced as a result of this chance viewing. On his direct appeal, the Georgia Court of Appeals noted that "[t]he fact

that a defendant, while outside the courtroom, is by chance seen in handcuffs by one or more of the jurors does not automatically require the grant of a mistrial." 159 Ga.App. at 848, 285 S.E.2d at 587. The appellate court pointed out that the jury was polled at the request of the petitioner at the end of trial as to whether any of the jurors viewed the petitioner in handcuffs. One juror indicated that she did indeed see the petitioner being led from the courthouse in handcuffs, but that this viewing did not affect her verdict. (Tr. 651). The judge further polled the jury as to whether the one juror's viewing in any way affected or influenced their ability to be fair and impartial jurors. After receiving no affirmative response to this question, the trial court denied the motion for mistrial. (Tr. 651). After reviewing the transcript, the Court of Appeals ruled that the trial court did not abuse its discretion in denying the motion for a mistrial. 159 Ga.App. at 848, 285 S.E.2d at 587.

This Circuit has held that "brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to require a mistrial, and defendants bear the burden of affirmatively demonstrating prejudice." *United States v. Diecidue*, 603 F.2d 535, 549 (5th Cir.1979). As in *Diecidue*, the conditions under which the petitioner was seen were routine security measures rather than a situation of unusual restraint such as shackling of the petitioner during trial. In that the chance viewing was not so inherently prejudicial as to require a mistrial, and in that a review of the transcript reveals that the jurors indicated no prejudicial effect to the petitioner as a result of the viewing, the Magistrate finds this ground to be without merit. *See also Grantling v. Balkcom*, 632 F.2d 1261, 1264 (5th Cir. Unit B, 1980).

## SUFFICIENCY OF THE EVIDENCE

In ground 5, the petitioner contends that the trial court erred in denying his motion for new trial based on general grounds. The petitioner claims that the verdict is contrary to the evidence and

without evidence to support it, the verdict is decidedly and strongly against the weight of the evidence, and the verdict is contrary to law and the principles of justice and equity.

Petitioner raised the sufficiency of the evidence claim on his direct appeal. The pertinent facts, as set out by the Georgia Court of Appeals, are as follows:

> The state's evidence was based largely upon the testimony of the victim that after she left work in the late afternoon in the City of Atlanta she was forced by the defendant, who told her that "he had a gun" but she really couldn't tell as he had some clothes across his arm, to enter her automobile in a parking lot near her place of employment. She was forced to drive to another parking lot where he grabbed her purse and a loaded .38 caliber pistol she had in the purse. While holding her pistol in his hand, the defendant forced her to undress, get in the back seat and have intercourse with him, then to drive him to a dwelling located near Stone Mountain where she was able to escape. Defendant's testimony was that the victim had propositioned him to engage in sex, an agreement was had to have sexual intercourse for $20.00, and she had intercourse with him in the automobile; they proceeded to several places in DeKalb County, and he later drove off in the car with her purse after she left him at a dwelling near Stone Mountain. Further, he claimed that she was out to get him because he didn't give her the $20.00 which she requested. He was later found in a wrecked taxi cab in a wounded condition (gunshot wound in the chest). Defendant stated he had been robbed, he was then transported to the hospital for surgery. After surgery he was poisoned by the rejection of penicillin.

159 Ga.App. at 846, 285 S.E.2d at 585–86. Noting that the credibility of the witness is entirely in the province of the trier of fact, the Court of Appeals found that the evidence in this case was more than sufficient for a rational trier of fact to have found the defendant guilty beyond a reasonable doubt of the offense of rape and robbery. *Id.* at 846–47, 285 S.E.2d at 586.

In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court announced the standard to be applied by federal courts in habeas corpus proceedings challenging the sufficiency of the evidence supporting a state court conviction. The Court stated that "the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324, 99 S.Ct. at 2791–92. We must review the evidence in the light most favorable to the prosecution. *Id.* at 326, 99 S.Ct. at 2793. *See also, Duncan v. Stynchcombe,* 704 F.2d 1213 (11th Cir.1983). After a careful review of the record, the Magistrate agrees with the Georgia Court of Appeals in its finding that a reasonable trier of fact could have found the petitioner guilty beyond a reasonable doubt of rape and robbery.

## PROSECUTORIAL MISCONDUCT

■ In ground 6, the petitioner contends that the prosecutor's statement in the presence of the jury that the victim was "raped, R–A–P–E–D," was inflammatory, prejudicial, and amounted to prosecutorial misconduct. The petitioner further contends that the trial court erred in overruling the defendant's motion for a mistrial.

The alleged prosecutorial misconduct took place during the cross-examination of Ms. Lee, the victim:

Q. (Mr. Kane, petitioner's trial attorney): What I am saying is, Miss Lee, you have told the jury in this courtroom that you were here, and that you engaged in intercourse there?

A. No, not there.

Mr. Parker (the prosecutor): Your honor, she's not saying she engaged in intercourse; was raped, R–A–P–E–D. I haven't been objecting to counsel; he is continuing to say that. I'm going to object at this time, your honor.

Mr. Kane: He can object, your honor, but the man is accused of rape; he hasn't been proven guilty of anything at this point. So as far as I'm concerned, she engaged in an act of intercourse.

Mr. Parker: Your honor, we are not concerned with what he is concerned about. He doesn't have this opportunity—

Mr. Kane: I'm sorry.

The Court: I've just about had enough. Both of you know you are not supposed to express any personal opinion of what happened. You are supposed to ask questions. When you get to the end of the trial, you will have a chance to make your speech. But you are not conducting this trial properly. Get back and ask one question at a time. Don't get out to a narrative, just ask questions.

Mr. Kane: May I have a ruling, your honor? May I use the term "intercourse"?

The Court: The law doesn't permit me to tell you what to use. Use whatever term you want to. Young lady, if you don't agree with whatever the lawyer says when he asks questions, tell him you don't agree with it.

(Tr. 320–21). Petitioner's motion for a mistrial the next day based on this incident was overruled by the trial court. (Tr. 442–44).

In *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), the Supreme Court set forth the standards for reviewing habeas petitions raising the impropriety of a district attorney's comments. The Court noted that "not every trial error or infirmity ... constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Id.* at 642, 94 S.Ct. at 1871. (citation omitted). The Court went on to state that reversal for improper remarks by the prosecution will only be required when the remarks render the petitioner's "trial so fundamentally unfair as to deny him due process." *Id.* at 645, 94 S.Ct. at 1872. The Eleventh Circuit has interpreted *Donnelly* to require reversal only when there is a reasonable probability that, in the absence of the improper remarks, the outcome would have been different. *Brooks v. Kemp*, 762 F.2d 1383, 1403 (11th Cir.1985) (*en banc*). "Reasonable probability" has been defined as a probability sufficient to undermine confidence in the outcome. *Drake v. Kemp*, 762 F.2d 1449, 1458 (11th Cir.1985).

It is clear under the foregoing analysis that the prosecutor's comments did not render the petitioner's trial fundamentally unfair. While the prosecutor's spelling of the word "raped" may not have been proper, it is highly unlikely that it had any effect on the jury whatsoever. Thus, there is no reasonably probability that absent the arguably improper comment of the prosecutor the outcome would have been different.

### UNCONSTITUTIONAL SEARCH AND SEIZURE

In ground 8, petitioner contends that his room at the YMCA was searched pursuant to an invalid search warrant. Specifically, petitioner contends that Detective Tiedge, the affiant, intentionally misstated material facts in order to obtain the search warrant. Petitioner raised this claim at his state habeas hearing and that court concluded that the search warrant was properly issued based on probable cause and that there was sufficient evidence in the affidavit to establish such probable cause. (Resp.Ex. No. 4 at 6).

In *Stone v. Powell*, 428 U.S. 465, 482, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976), the Court stated that when a petitioner is afforded the opportunity for full and fair litigation of a Fourth Amendment claim in state court, he is precluded from having this claim considered in a federal habeas proceeding. *See also, Hance v. Zant*, 696 F.2d 940, 947 (11th Cir.), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983). In the instant case, petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim at his state habeas proceeding. Thus, the petitioner is precluded from again litigating his Fourth Amendment claim in this Court.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In ground 9, petitioner contends that he received ineffective assistance of counsel at trial as a result of a death threat directed at his trial attorney during trial by the victim's common-law husband. As a result of this death threat, petitioner contends that his trial attorney became ineffective in that he knowingly failed to impeach the allegedly perjured testimony of Detective Tiedge and Ms. Lee and that he failed to ask that lab results, which would have been exculpatory to the petitioner, be admitted into evidence.

In *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Court stated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." The Court articulated a two-part test for determining whether we can "rely on" the trial result. First, we determine whether the petitioner has shown that counsel's performance was "deficient." *Id.* at 687, 104 S.Ct. at 2064. We focus on the professional reasonableness of counsel's assistance under the circumstances, bearing in mind that there are countless ways to provide effective assistance in a given case. Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. Second, we determine whether the petitioner has shown that the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. Here, the appropriate task is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694, 104 S.Ct. at 2068. Since the object of an ineffectiveness claim is not to grade counsel's performance, we need not determine whether counsel's performance was deficient if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. *Id.* at 697, 104

S.Ct. at 2069–70. *See also, Fleming v. Kemp,* 748 F.2d 1435 (11th Cir.1984).

It is clear under the *Strickland v. Washington* standard that petitioner received effective assistance of counsel in this case. Although petitioner claims that he received ineffective assistance of counsel as the result of a death threat by the victim's common-law husband, petitioner's trial attorney testified at the petitioner's state habeas hearing that the death threat had no effect on him or his representation of the petitioner. (Tr. 8). Petitioner's trial attorney further testified that he did not move for a mistrial because the threat was made out of the presence of the jury. (Tr. 8).

■ Petitioner's trial attorney also testified that he did not attempt to enter any lab test into evidence because the theory of their defense was that the act was consensual. (Tr. 19). Since counsel's decision not to request that lab tests be introduced into evidence was a product of sound trial strategy, petitioner has failed to show any "deficiency" under *Strickland v. Washington. See, Griffin v. Wainwright,* 760 F.2d 1505 (11th Cir.), *reh. denied,* 765 F.2d 1123 (11th Cir.) and 770 F.2d 1084 (11th Cir.1985).

Although petitioner contends that his trial attorney failed to impeach Detective Tiedge and Ms. Lee, a reading of the trial court record reveals that petitioner's attorney vigorously cross-examined both Ms. Lee and Detective Tiedge. (Tr. 269–326, 426–430, 450–509). Moreover, petitioner's trial attorney testified at his state habeas hearing that he tried his very best to impeach the witnesses adverse to the petitioner and that he felt that he was substantially successful in impeaching the testimony of Detective Tiedge and Ms. Lee. (Tr. 14, 28).

Under the facts and circumstances of petitioner's case, it is evident that the petitioner has failed to show that his counsel's performance was deficient, let alone show that he was prejudiced by counsel's performance. Indeed, the record reveals that counsel vigorously and competently advocated petitioner's case.

## RECOMMENDATION

Accordingly, for the reasons stated above, it is hereby recommended that the petition for a writ of habeas corpus be denied.