James COLSON, Petitioner,

v.

Robert MITCHELL, Superintendent,
Eastern Correctional Facility,
Respondent.

No. CV 91–1808.

United States District Court,
E.D. New York.

July 29, 1992.

James Colson, petitioner, pro se.

James Catterson, Suffolk County Dist. Atty. by John J. Ribeiro, Riverhead, N.Y., for respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

James Colson ("petitioner"), appearing *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's application is denied.

## I. BACKGROUND

On the night of January 21, 1986, a man (later identified as co-defendant, Frank [Fernando] Rivera ("Rivera")) approached a taxicab parked by an illuminated platform at the Wyandanch Train Station in Suffolk County, New York. After a face-to-face discussion with the driver, Edmond Brown ("Brown"), about the fare to the nearby town of Deer Park, New York, Rivera walked around the front of the cab and entered it through the front passenger side door. Immediately after Rivera closed the door, a second man (later identified as petitioner) entered the cab through the rear passenger door. Brown turned on the cab's interior light and turned to see petitioner.

After agreeing on the fare, Brown attempted to drive the two men to their requested destination. He had driven approximately one mile when petitioner placed one arm around Brown's neck, held a knife to Brown's neck with his free hand, and told Brown to surrender control of the

cab. When Brown complied, Rivera took control of the steering wheel and parked the cab on the side of a poorly-lighted road. Rivera went through Brown's pockets and took his keys, money, and a red "Bic" cigarette lighter. At this time, Brown was able to see petitioner, who was still holding a knife to Brown's neck, through the cab's rear view mirror.

Thereafter, Rivera walked around the front of the cab and entered it through the driver's door. Petitioner told Brown to get out of the cab and to walk without turning around toward a nearby fence. Brown followed petitioner's commands, and then heard the cab being driven away.

Calling for assistance from a nearby residence, Brown described the robbers to the emergency operator. He described petitioner as a broad-shouldered black man wearing a black leather jacket, dark dungarees, and black gloves, and Rivera as a tall black man wearing a blue two-tone ski jacket, a dark, hooded sweatshirt, and dark pants.

Within ten minutes, Police Officer Hilary Balfour ("Balfour") arrived at the residence. Brown repeated the descriptions to her. Balfour transmitted the descriptions over the radio to police units in the area.

As she was transporting Brown to the police precinct, Balfour received a radio call from Police Officer John Brennan ("Brennan"). He asked for a confirmation of the descriptions and told Balfour that he and Police Officer John McHugh ("McHugh"), who were on routine patrol of the area in a squad car, had located two men who fit Brown's descriptions standing with approximately forty other people on the corner of a local intersection.[1] Balfour asked Brown whether he would be able to identify them. When Brown replied in the affirmative, Balfour proceeded to Brennan's location.

Once there, Brown positively identified Rivera and petitioner as the assailants, and the suspects were arrested. They were searched and Brown's keys were found in Rivera's possession, along with money and two cigarette lighters.

As they were being driven to the precinct, Brennan advised petitioner and Rivera of their constitutional rights, which they waived. (H. 98, 114; T. 638, 674).[2] Upon arriving at the precinct, the suspects were processed, a procedure that included a strip search and an inventory of the property taken from them. Rivera was asked whether the red "Bic" lighter found in his possession was his. He replied, "No, it must be the cabbie's." (H. 116–17, T. 638, 674).

Thereafter, Brennan returned to the area of the arrest. He found the stolen cab approximately 150 feet from the location where he initially observed the suspects.

On January 29, 1986, petitioner was indicted by a grand jury and charged pursuant to § 160.15 of the New York Penal Law with robbery in the first degree, a class "B" violent felony. He was convicted after a jury trial and sentenced, on February 2, 1987, as a persistent felony offender, to a term of incarceration of twelve years to life.

On March 20, 1989, the Appellate Division, Second Department, affirmed petitioner's conviction.[3] 148 A.D.2d 626, 539 N.Y.S.2d 89. Leave to appeal to the New

---

1. Brennan testified at trial that he initially had observed the two subjects as they were walking northbound. Upon seeing the police car, the suspects turned and walked in the opposite direction. After the retransmission of the descriptions, Brennan and McHugh again passed the suspects and parked the squad car in front of them. As Brennan was getting out of the car, the suspects turned again and retraced their steps northbound. Brennan called for them to stop so that he and McHugh could speak to them. When they complied, the officers stopped the two men, frisked them, asked them for identification, and told them that a crime

victim was en route to determine whether they were the men who had robbed him.

2. "H" refers to the hearing. "T" refers to the trial transcript.

3. Petitioner had argued that: (1) Brown's testimony that he identified petitioner at a showup should have been suppressed because it was the result of an unconstitutional stop and seizure and was unduly suggestive; (2) Brown did not have a source independent of the showup that allowed him to make an in-court identification of petitioner; (3) the People failed to prove petitioner's guilt beyond a reasonable doubt be-

York Court of Appeals was denied on May 16, 1989. 74 N.Y.2d 662, 543 N.Y.S.2d 405, 541 N.E.2d 434.

On or about October 30, 1989, petitioner, appearing *pro se,* filed in the County Court of Suffolk County a motion to vacate the judgment of his conviction pursuant to §§ 440.10 and 440.20 of the New York Criminal Procedure Law ("CPL"). He argued that he had received ineffective assistance of trial counsel. The trial court denied the application on the ground that it was "devoid of any sworn allegations of fact." Decision and Order of Harvey W. Sherman, J.C.C., Ind. No. 131–86, November 29, 1989, at 1.

On or about December 13, 1989, petitioner refiled his motion to vacate, this time conforming his pleadings to the requirements of CPL § 440.30. Petitioner asserted four grounds in support of his ineffective assistance argument: (1) he had a contingent fee arrangement with trial counsel; (2) trial counsel failed to interview alibi witnesses; (3) trial counsel excluded petitioner from participation in his jury selection; and (4) trial counsel failed to pursue *Rosario* material.

The trial court reviewed the merits of petitioner's claims and denied the motion in all respects on April 4, 1990. The Appellate Division, Second Department, denied leave to appeal on August 9, 1990. On October 5, 1990, the Court of Appeals dismissed the application for a certificate to appeal pursuant to CPL § 450.90(1). 76 N.Y.2d 939, 563 N.Y.S.2d 68, 564 N.E.2d 678.

In December 1990, petitioner filed his third motion to vacate, claiming that: (1) he was improperly adjudicated as a persistent felony offender; and (2) the People improperly failed to disclose to him that Brown, the complaining witness, had a Driving While Intoxicated charge pending against him during the hearing and trial of the underlying criminal action. The trial court denied the application on January 15, 1991,

and the Appellate Division, Second Department, denied leave to appeal on April 10, 1991.

This petition followed. Petitioner sets forth four grounds in support of his application for habeas relief: (1) he was deprived of his constitutional right to effective assistance of trial counsel; (2) he was deprived of his right to due process when the prosecutor withheld exculpatory evidence; (3) evidence regarding his showup identification was improperly admitted at trial; and (4) he was deprived of his right to a fair trial when a juror saw him being led into the courtroom in handcuffs. Petitioner has exhausted the remedies available to him in the state court system as required in a federal habeas corpus proceeding. *See* 28 U.S.C. § 2254(b); *see also Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

## II. DISCUSSION

### A. PROCEDURAL DEFAULT

Respondent contends that petitioner's claims of prosecutorial misconduct (in failing to disclose a pending criminal charge against Brown) and ineffective assistance of trial counsel are procedurally barred from habeas review. For the reasons that follow, this Court finds that only petitioner's prosecutorial misconduct claim is procedurally barred from habeas review.

 The Supreme Court has stated that a procedural default bars consideration of a federal claim on either direct or habeas review only when the "last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (citing *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638–39, 86 L.Ed.2d 231 (1985) (quoting *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983))); *see also Rollins v. Leonar-*

cause there was insufficient evidence to prove petitioner's presence at the crime scene; (4) he was denied a fair trial when the jury observed him while he was handcuffed; and (5) the sen-

tence was excessive. On or about September 30, 1988, petitioner filed a *pro se* supplemental brief challenging the trial court's instructions on reasonable doubt.

*do,* 938 F.2d 380, 381 (2d Cir.1991) (citation omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 944, 117 L.Ed.2d 114 (1992). Moreover, a federal court may not entertain a case that is procedurally barred absent a showing of sufficient cause for the procedural error and a demonstration of prejudice to not having federal court review. *Reed v. Ross,* 468 U.S. 1, 11, 104 S.Ct. 2901, 2907–08, 82 L.Ed.2d 1 (1984) (citations omitted); *Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Forman v. Smith,* 633 F.2d 634, 638–43 (2d Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981). The rationale of the "cause and prejudice" standard stems in part from principles of federalism in that a state's adherence to its procedural rules constitutes an independent and adequate state ground, which precludes federal habeas review of the underlying federal claims. *See Wainwright,* 433 U.S. at 81, 97 S.Ct. at 2503–04 (citing *Fox Film Corp. v. Muller,* 296 U.S. 207, 56 S.Ct. 183, 80 L.Ed. 158 (1935); *Murdock v. Memphis,* 87 U.S. (20 Wall.) 590, 22 L.Ed. 429 (1875)).

.1. *Claim of Prosecutorial Misconduct*

■ Petitioner claims that the prosecution improperly withheld evidence that Brown, the complaining witness, had a Driving While Intoxicated charge pending against him at the time of petitioner's hearing and trial. Petitioner raised this claim for the first time in the third § 440 motion that he filed before the trial court. In its January 15, 1991 decision, that court, which was the last court to render a judgment, "clearly and expressly" denied that motion

on procedural grounds. It stated, "With due diligence, the defendant could have raised his arguments on appeal and in connection with his prior motions to vacate but failed to do so." Decision and Order of Harvey W. Sherman, J.C.C., Ind. No. 131–86, Jan. 15, 1991, at 1 (citing CPL § 440.-10(3)(a)).

Further, petitioner does not, and indeed cannot, show cause for his failure to raise the claim earlier, and there is no significant possibility that the verdict would have been any different had the jury known of the pending charge against Brown.[4] *See Wainwright,* 433 U.S. at 86–87, 97 S.Ct. at 2506. Thus, this Court finds that petitioner is procedurally barred from asserting a prosecutorial misconduct claim.

2. *Claim of Ineffective Assistance of Trial Counsel*

■ Petitioner first raised the claim of ineffective assistance of trial counsel in his second § 440 motion. As stated, the trial judge denied the motion on the merits and petitioner appealed the denial to the Appellate Division, Second Department. Respondent states, "[The Appellate Division's denial of the appeal] is clearly a decision on a procedural bar since absolutely no discussion of any of the merits argued appears." (Respondent's Memorandum of Law in Opposition to Petition for Habeas Corpus Relief at 10). However, the Appellate Division did not render a judgment but, rather, "expressly declined to review [the trial judge's] decision." *Rahming v. Kelly,* No. CV 89–2620, 1989 WL 101919, at *2 (S.D.N.Y. Aug. 28, 1989), *affd.,* 907 F.2d 144 (2d Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 105, 116 L.Ed.2d 75 (1991).[5]

---

**4.** Although the application was denied on procedural grounds, Judge Sherman noted that "[m]oreover, there is no significant probability that the verdict would have been different had the jury been made aware of the pending charge against the complaining witness." Decision and Order of Harvey W. Sherman, J.C.C., Ind. No. 131–86, January 15, 1991, at 1–2 (citation omitted).

The Appellate Division, Second Department denied petitioner's application for a certificate granting leave to appeal the trial court's judgment. Decision and Order of Stanley Harwood, J., Ind. No. 131–86, Apr. 10, 1991. It is to be noted that "the Appellate Division did not render a 'judgment' when it denied [petitioner] leave to appeal, but expressly declined to review [the trial judge's] decision." *Rahming v. Kelly,* No. CV 89–2620, 1989 WL 101919, at *2 (S.D.N.Y. Aug. 28, 1989), *affd.,* 907 F.2d 144 (2d Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 105, 116 L.Ed.2d 75 (1991).

**5.** The Court of Appeals dismissed petitioner's application for a certificate to appeal from the Appellate Division's denial of the appeal "because the order sought to be appealed is not appealable under Criminal Procedure Law, § 450.90(1)." Certificate Dismissing Application, Stewart F. Hancock, Jr., A.J., Ind. No. 131–86, October 5, 1990.

Accordingly, because the last state court to render a judgment on petitioner's second § 440 motion did so on the merits, the Court determines that petitioner's claim of ineffective assistance of trial counsel is not procedurally barred from habeas review.

## B. THE MERITS OF PETITIONER'S CLAIMS

### 1. *Claim of Ineffective Assistance of Counsel*

Petitioner raises four arguments in support of his claim that he was deprived of his right to effective assistance of counsel. He contends that: (a) a contingent fee arrangement existed between petitioner and counsel, which prejudiced his defense; (b) counsel refused to allow him to participate in jury selection; (c) counsel failed to interview alibi witnesses; and (d) counsel failed to pursue exculpatory material.

It is well established that an indigent defendant in a criminal action is guaranteed the right to counsel. U.S. Const. amend. VI; *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Supreme Court has recognized that the right to counsel under the Sixth Amendment is "the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970).

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong test that a petitioner must meet to sustain an ineffective assistance claim. A petitioner must first show that counsel's performance was deficient, and second, that "the deficient performance prejudiced the defense" to the extent that petitioner was denied his right to a fair trial. *Id.* at 687, 104 S.Ct. at 2064. The Court defined the standard for prejudice in noting that a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See id.* at 695, 104 S.Ct. at 2068-69. Moreover, petitioner must overcome a "strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689, 104 S.Ct. at 2065. In sum, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.*

### a. Contingency Fee Arrangement

A contingent fee arrangement exists when compensation is dependent, in whole or in part, upon the amount, if any, of recovery. *Burlington v. Dague,* —— U.S. ——, ——, 112 S.Ct. 2638, 2640, 120 L.Ed.2d 449 (1992); N.Y.Comp.Codes R. & Regs. tit. 22, § 691.20(c) (1987). It is petitioner's burden to demonstrate the alleged ineffectiveness of counsel by showing that "a contingent fee arrangement existed and that it affected the manner in which his attorney conducted the defense prejudicially to [him]." *People v. Winkler,* 71 N.Y.2d 592, 528 N.Y.S.2d 360, 362-63, 523 N.E.2d 485, 487-88 (Ct.App.1988). Moreover, although a contingent fee arrangement in a criminal case is prohibited by DR 2-106(C)(1) of the New York State *Lawyer's Code of Professional Responsibility,* such an arrangement does not amount to a *per se* showing of ineffective assistance of counsel. *Winkler,* 528 N.Y.S.2d at 362, 523 N.E.2d at 487.

■ Petitioner contends that a contingent fee arrangement existed between him and his defense attorney at the time of his trial, which created a conflict of interest that deprived him of his Sixth Amendment right to meaningful representation. However, a review of the record in this case indicates that petitioner has failed to demonstrate the existence of a contingent fee arrangement in the underlying criminal action.

As noted by the trial court in its April 4, 1990 decision:

Although an assignment to counsel of funds recovered in a [separate] personal injury action was executed, such assignment did not in itself establish a contingent fee arrangement [in the criminal action]. It is not claimed that defense counsel was affiliated with counsel in the personal injury action or that he had any

control upon the amount of recovery obtained in that action.

Decision and Order of Harvey W. Sherman, J.C.C., Ind. No. 131–86, Apr. 4, 1990, at 3. Moreover, the record reflects that defense counsel received a set fee, with an additional amount for going to trial, which "was not in any way dependent upon the defendant obtaining a settlement or verdict in the personal injury action." *Id.*

This Court determines that petitioner has failed to demonstrate that a contingent fee arrangement existed between him and his defense attorney. *See Winkler,* 528 N.Y.S.2d at 362, 523 N.E.2d at 487. Thus, petitioner's reliance on this argument as a basis for his ineffective assistance claim is meritless.

b. Nonparticipation in Jury Selection

Petitioner contends that his defense counsel excluded him from jury selection proceedings and thereby violated his due process right to be present during all stages of his trial. Additionally, petitioner contends that counsel aided the prosecution in purposeful discrimination during jury selection when he did not object to the prosecution peremptorily challenging the only black prospective juror, which consequently deprived him of a jury of his peers.

Petitioner correctly asserts his right to be present during all stages of a criminal proceeding. Fed.R.Crim.P. 43(a); *Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 2094–95, 45 L.Ed.2d 1 (1975); *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970). Contrary to his assertion, however, the trial transcript indicates that petitioner *was* afforded the opportunity for counsel-client conference during jury selection, (T. 151), and that petitioner was, indeed, consulted. (T. 161). Further, the record reveals no evidence of any purposeful discrimination by the prosecution during jury selection. Consequently, petitioner fails to support his claim that counsel disregarded his due process rights by not including him in the jury selection process. Thus, the Court determines this claim to be without merit.

c. Investigation of Alibi Witnesses

■ Petitioner has the burden of affirmatively proving that, had his trial counsel interviewed and called alibi witnesses to testify, there is a reasonable probability that he would have been acquitted. *Lawrence v. Armontrout,* 961 F.2d 113, 114 (8th Cir.1992) (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). In the instant case, petitioner's claim that counsel failed to interview alibi witnesses and produce their testimony at trial is unsupported by the trial record.

Despite the fact that neither petitioner's wife nor his brother ultimately testified at the trial, they appeared in court and were prepared to testify. Indeed, the decision not to call petitioner's wife to testify was made after a discussion between petitioner and his attorney. (T. 710). Thus, petitioner's assertion that counsel "did not make any attempt to communicate" with potential defense witnesses is without merit.

d. Rosario Material Claim

■ Finally, petitioner contends that counsel's failure to procure police "memo books" during the trial constituted a violation of the *Rosario* rule, which requires the prosecution to "turn over its witnesses' prior statements following direct examination so that they may be used by the defense for impeachment purposes in cross examination." *Payne v. LeFevre,* 825 F.2d 702, 705 (2d Cir.1987) (discussing *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (Ct.App.), *cert. denied,* 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961), and citing *People v. Poole,* 48 N.Y.2d 144, 422 N.Y.S.2d 5, 7, 397 N.E.2d 697, 698–99 (Ct.App.1979) (footnote omitted), *cert. denied,* 484 U.S. 988, 108 S.Ct. 508, 98 L.Ed.2d 506 (1987)). This rule has been codified as CPL § 240.45.

Petitioner argues that a violation of *Rosario* is error, amounting to *per se* ineffective assistance of counsel, (Petitioner's Memorandum of Law at 10), and cites *People v. Jones,* 70 N.Y.2d 547, 523 N.Y.S.2d 53, 517 N.E.2d 865 (Ct.App.1987), and *People v. Ranghelle,* 69 N.Y.2d 56, 511 N.Y.S.2d 580, 503 N.E.2d 1011 (Ct.App. 1986), for that proposition. However, nei-

ther case lends support to petitioner's claim. Instead, each of those cases states, *inter alia*, that the prosecution's complete failure to deliver *Rosario* material to the defense constitutes *per se* error, which requires reversal of the conviction and a new trial. *Jones*, 523 N.Y.S.2d at 56, 517 N.E.2d at 868; *Ranghelle*, 511 N.Y.S.2d at 585, 503 N.E.2d at 1016. Although it is true that receipt of such material puts defense counsel in a better position for cross examination purposes, a violation of the rule does not constitute *per se* ineffective assistance of counsel. *See Rosario*, 213 N.Y.S.2d at 451, 173 N.E.2d at 883–84.

■ The instant trial record contains no evidence that counsel neglected to obtain exculpatory material. As the trial court correctly noted, it was only upon trial counsel's vigorous cross-examination that inconsistencies between a police officer's trial testimony and his testimony at a prior hearing were disclosed. Decision and Order of Harvey W. Sherman, J.C.C., Ind. No. 131–86, Apr. 4, 1990, at 2. Significantly, petitioner's counsel led the police officer to admit that his testimony had changed between the hearing and the trial. Thus, there is no merit to petitioner's ineffective assistance claim on this ground. In addition, this Court concludes that petitioner suffered no prejudice when the memo books, containing the same evidence of the officer's inconsistent statements that was disclosed during cross examination, were not presented to the jury as evidence. *See Strickland*, 466 U.S. at 687, 695, 104 S.Ct. at 2064, 2068–69.

Petitioner therefore fails to support his ineffective assistance of counsel claim, and habeas relief is denied on this ground.

2. *Claim That Evidence Regarding Petitioner's Showup Identification Was Improperly Admitted at Trial*

In asserting that testimony regarding his showup identification should have been suppressed, petitioner contends: (a) his stop and subsequent seizure by Brennan and McHugh were unconstitutional; and (b) the showup identification procedure was unduly suggestive.

a. Stop and Seizure

■ The Supreme Court, in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), established the procedure for investigative stop and detention. The Court held that police may "stop and frisk" when there is a reasonable suspicion that a crime occurred or is about to occur. *Id.* at 20–27, 88 S.Ct. at 1879–83. Suspicion is reasonable when it is "grounded in specific and articulable facts" that the suspect was "involved in or is wanted in connection with a completed felony." *United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). Suspicion is also reasonable when there is a minimal level of objective justification for making a stop, which is less than the level of suspicion required for probable cause to arrest. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).

■ Permissible duration and intrusiveness of an investigatory stop is not subject to a bright line rule, *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985); instead, it depends on the "extent of the law enforcement interest and the seriousness of the conduct giving rise to a reasonable suspicion of unlawful activity." *United States v. Pelusio*, 725 F.2d 161 (2d Cir.1983).

■ From an examination of the trial record, this Court finds that the officers were within the bounds set forth in *Terry* and its progeny when they stopped and temporarily detained petitioner. Suspicion for the stop was reasonably based on a detailed description of the two suspects in a robbery that occurred approximately ten minutes earlier in the same general area, as well as the evasive actions taken by petitioner and his co-defendant upon their observation of the patrol car. The trial record indicates that during the stop, the officers briefly questioned petitioner, patted him down, and requested that he wait for the complainant, who arrived within minutes of the stop. There is no evidence that petitioner was illegally detained. Thus, the circumstances warranted a stop

by police, and police conduct preceding petitioner's arrest was proper.

### b. Showup Procedure

Petitioner claims that the showup procedure subsequent to an illegal stop is "fruit of the poisonous tree," *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963), and, thus, inadmissible at trial. He also contends that police used an unduly suggestive showup procedure to secure a positive identification and petitioner's subsequent arrest.

■ Because this Court has established the legality of petitioner's stop and detainment by police, the showup is not *per se* inadmissible under the *Wong Sun* doctrine. The Supreme Court, in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), set forth the standard for admitting identification evidence at trial. In order to violate due process, an identification procedure used by police "must create a very substantial likelihood of misidentification." *Id.* at 198, 93 S.Ct. at 381–82 (citation omitted); *Johnson v. Dugger,* 817 F.2d 726, 729 (11th Cir.1987). Under this standard, even an unnecessarily suggestive identification of a suspect will be admissible if the totality of the circumstances indicates that the identification was reliable. *Neil,* 409 U.S. at 199, 93 S.Ct. at 382.

■ In addition, the Supreme Court, in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), narrowly defined a suggestive identification to include, *inter alia,* when "all in the lineup but the suspect were known to the identifying witness, [or] the other participants in a lineup were grossly dissimilar in appearance to the suspect, [or] only the suspect was required to wear distinctive clothing which the culprit allegedly wore...." *Id.* at 233, 87 S.Ct. at 1935; *see Johnson v. Ross,* 955 F.2d 178, 181 (2d Cir.1992).

In the case at hand, Brown observed petitioner and his co-defendant during at least two separate intervals of time. Although the robbery occurred at night, Brown had the opportunity to directly observe petitioner for at least one or two minutes in the illuminated cab. Police officers, relying on Brown's descriptions, located and temporarily detained both suspects within ten minutes of the crime. Moreover, petitioner's assertion that the officers seized him while he was standing among a crowd of thirty or forty other black males dressed in similar, non-distinctive clothing only reinforces the accuracy and reliability of Brown's description. Given these facts, this Court finds that the descriptions were reliable and that there is no evidence from the totality of the circumstances that petitioner's showup, resulting in Brown's positive identification of petitioner, was unduly suggestive.

This Court thus finds that the police stop and temporary detainment of petitioner was within constitutional boundaries. Additionally, the showup procedure used to secure a positive identification was not unduly suggestive and consequently admissible. Accordingly, habeas relief is denied on these grounds.

### 3. *Claim That Petitioner Did Not Receive A Fair Trial*

■ Petitioner claims that his Sixth and Fourteenth Amendment rights to a fair trial were violated when a member of the jury allegedly saw him being led into the courtroom in handcuffs. Generally, a defendant has the constitutional right to appear before a jury free of shackles. *See United States v. Thomas,* 757 F.2d 1359, 1363 (2d Cir.) (citation omitted), *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985). However, the Supreme Court has held that in some cases the use of shackles or gags on a criminal defendant during his trial is constitutionally permissible. *Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970); *Estelle v. Williams,* 425 U.S. 501, 505, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976) (citation omitted); *Thomas,* 757 F.2d at 1363.

In the instant case, petitioner was neither shackled nor gagged during his trial. Although petitioner contends that he was seen in handcuffs by a juror while he was being led into the courtroom, the trial rec-

ord does not contain any evidence supporting this contention. Because there was only one time during the trial that the jury room door was open, merely creating the possibility of jurors viewing petitioner in handcuffs, he fails to present proof that any jurors were prejudiced by the sight of him in handcuffs.

 Moreover, handcuffing is generally not considered an unusual restraint, but part of routine security measures. *United States v. Diecidue*, 603 F.2d 535, 539 (5th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980); *Jones v. Gaither*, 640 F.Supp. 741, 747 (N.D.Ga. 1986). Thus, even if a juror had seen petitioner in handcuffs, this Court holds that it would not have been so prejudicial as to require the granting of habeas relief.

### III. CONCLUSION

For the aforementioned reasons, petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

SO ORDERED.