OPINION OF THE COURT
Bellacosa, J.
Legal representation in a criminal proceeding pursuant to a contingent fee retainer, while unquestionably unethical, does not constitute per se ineffective assistance of counsel. A defendant may, however, be entitled to relief upon satisfying the defense burden of showing that the contingent fee conflict of interest effected less than meaningful and constitutionally guaranteed legal representation.
Defendant’s conviction for murder in the second degree after a jury trial was reversed by the Appellate Division on the law; it ordered a new trial solely on a per se ineffective *594 assistance of counsel ground raised in a CPL 440.10 proceeding. We disagree with that result and reverse and remit to the Appellate Division.
Defendant-respondent Winkler and an accomplice, Williams, killed Winkler’s father while he slept. The two men with another, named Gruber, drove to the family house and parked nearby. Leaving Gruber with the car, the two walked to the house. Approximately 45 minutes later, Gruber heard two shots. Shortly thereafter, Winkler and Williams returned; Winkler opened the trunk and Williams placed a rifle wrapped in a tee shirt inside. In the car, Winkler told Gruber, "You don’t know anything” and promised Williams $10,000. Williams made statements such as, "I shot him in the head and chest”, "we got the guy”, and "I can’t believe I shot him”.
After Winkler’s arrest, his mother and grandmother engaged Robert Huflay as his counsel under a written contract requiring payment to Hufjay of $2,000 upon execution and $18,000 upon the settlement of the elder Winkler’s estate. The contract added that: "It is understood and agreed, subject to the approval of richard winkler, that in the event richard winkler is acquitted or found not guilty by reason of insanity, or some other legal reason, and inherits from the Estate of Irving Winkler, that richard winkler shall pay, as additional legal fees, the sum of $15,000.” Prior to endorsing the contract, defendant personally increased the figure in the contingent fee clause from $15,000 to $25,000.
Following his conviction for murder in the second degree after a jury trial and while his appeal from the judgment was pending, Winkler moved under CPL 440.10 to set aside his conviction on the ground of ineffective assistance of counsel. Winkler revealed for the first time in his moving papers that his trial counsel had represented him on a contingent fee arrangement. He contended that the agreement was a per se violation of his right to effective assistance of counsel and that the representation he received was deficient in other respects; namely, not seeking jury instructions on lesser included offenses; not asking for a charge that Gruber was an accomplice; not asserting an intoxication defense; not moving for severance; not preparing him for his testimony; and not making certain trial objections.
The Westchester County Court rejected the per se violation argument and addressed the issue of denial of effective assistance of counsel under the standard in People v Baldi (54 *595 NY2d 137). In its Baldi analysis, the trial court did not consider the contingent fee agreement at all nor did it examine the potential compromising effects the agreement might otherwise relevantly have exerted on the representation of defendant. Finding no factual support for Winkler’s assertion of professional deficiencies, the court ruled he received meaningful representation.
The Appellate Division reversed, on the law, the denial of Winkler’s CPL 440.10 motion, granted it, vacated the judgment of conviction, ordered a new trial and dismissed the appeal from the judgment as academic. That court concluded that such agreements intrinsically create a substantial possibility of prejudice because they pit an attorney’s financial interest against the client’s entitlement to uncompromised counsel. The court reasoned that since these agreements are outside the record and their effect on counsel’s conduct is insidiously subtle, they would seldom come to the attention of the Trial Judge so that protections such as those provided by People v Gomberg (38 NY2d 307) could be interposed. The Appellate Division ruled that contingent fee arrangements in criminal cases constitute a per se denial of a defendant’s right to effective assistance of counsel because of the perceived significance of the conflict and the apparent unavailability of practical protections.
Our analysis starts with the well-settled proposition that ”[p]ublic policy properly condemns contingent fee arrangements in criminal cases” (Code of Professional Responsibility EC 2-20). DR 2-106 (C) of the code makes it a breach of legal ethics for a lawyer to "enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case” (Code of Professional Responsibility DR 2-106 [C]; see also, ABA Standards for Criminal Justice, Defense Function § 3.3 [e]). The New York State Bar Association adds relevantly "that the Code prohibition of DR 2-106 (C) encompasses, in addition to wholly contingent fees, agreements which provide in addition to a fixed basic fee, a further fixed fee contingent upon some specified result” (NY State Bar Opn No. 412 [1975]).
Complementing the professional disciplinary perspective, civil law principles condemn "bargain[s] to conduct a criminal case * * * in consideration of a promise of a fee contingent on success” (Restatement of Contracts § 542 [2]). These arrangements are thus met with universal disapproval and, as a *596 matter of strong public policy, we join in all appropriate efforts to discourage and sanction them.
The conflict between a client’s interest in effective assistance of counsel and an attorney’s financial inducements to satisfy the contingent fee qualifying terms creates an atmosphere for risky compromise of the client’s best interests on the gamble that the contingency might produce a bonus to the attorney rather than justice to the client. The prohibition of contingent fee arrangements protects a criminal defendant’s interests and reduces the temptation for counsel "to employ improper or corrupt tactics to enhance his fee” (ABA Standards for Criminal Justice, Defense Function, Commentary to § 3.3 [e]).
We strongly support the unanimous view that fees contingent upon achieving a specific result in a criminal case are wrong (see, MacKinnon, Contingent Fees for Legal Services, at 52 [1964]). We hold, however, that such agreements do not collaterally constitute a per se violation of a criminal defendant’s constitutional right to effective assistance of counsel. These two views are not inconsistent and may be harmonized without the adoption of a per se rule requiring reversals of convictions to sanction unethical contingent fee agreements. Indeed, the unethical attorney in this very case within the disciplinary arena has received the mildest form of professional sanction — admonition; whereas a per se rule in the criminal proceeding arena produces a serious and potent remedy — automatic reversal and full new trial. That is a disproportionate remedy.
Fee arrangements between an attorney and a client very often present some form of conflict of interest. An attorney whose fee is based on an hourly rate may have a financial incentive to prolong the action and go to trial in situations where the client’s best interest might be a negotiated guilty plea early on in the proceedings. Conversely, attorneys paid a lump-sum fee may have an incentive to dispose of a case quickly in situations where the client’s best interest might be to put the People to their proof at trial. These kinds of conflicts and their consequences are avoided, for the most part, by the honorable and faithful fulfillment of professional responsibilities by most attorneys. But none of these potential conflicts, including the forbidden contingent fee one in this case, when they do unfortunately occur, are apparent or amenable to trial court therapy because all these fee arrangements are confidential between lawyer and client.
*597 We are persuaded that the existence of a potential conflict of interest should not automatically be equated to ineffective assistance of counsel. Under similar circumstances, this court has declined to recognize a per se rule requiring reversal (see, People v McDonald, 68 NY2d 1, 11, n 5; People v Mattison, 67 NY2d 462, 468; People v Monroe, 54 NY2d 35, 38; People v Macerola, 47 NY2d 257, 264; see also, Strickland v Washington, 466 US 668; Cuyler v Sullivan, 446 US 335). A defendant attacking the integrity of what may otherwise be a validly secured criminal conviction on this ground bears an appropriately specified burden to demonstrate the alleged ineffectiveness by showing that a contingent fee agreement existed and that it affected the manner in which his attorney conducted the defense prejudicially to the defendant. On defendant’s satisfaction of that burden, a court can conclude that defendant was denied legally cognizable effective assistance of counsel.
A test for "effective assistance is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation” (People v Baldi, 54 NY2d 137, 146, supra, citing People v Droz, 39 NY2d 457). Thus, an unethical fee arrangement is not tantamount to less than "meaningful representation” any more than an ethical fee arrangement automatically equates to meaningful representation in all cases.
The potential impediment of less than meaningful representation derived from a contingent fee arrangement may exert an insidious and potentially permeating affect on the proceeding and the professional relationship. We hold, therefore, that a defendant is entitled to relief upon satisfying the defense burden of showing that the possible conflict of interest affected the defense in such a way, based on all relevant aspects of the representation directly or indirectly rooted in that impediment, that meaningful representation was not supplied under the Federal and State Constitutions (US Const 6th Amend; NY Const, art I, § 6; People v Alicea, 61 NY2d 23, 31; People v Baldi, 54 NY2d 137, 147, supra).
Automatic reversal in the retained attorney-client instance disproportionately penalizes the public weal because of a contingent fee arrangement entered into confidentially and against which no advance State protection can be imposed or is even available. Something more must be shown proving that the contingent fee arrangement in the particular and *598 relevant circumstances adversely and prejudicially affected the quality of the representation of defendant. Moreover, a per se rule would unwisely give sophisticated defendants and unscrupulous attorneys a delayed-trigger weapon to be sprung at some later strategic phase of the proceeding if events developed very badly for a defendant and the stakes made it worthwhile to assert even an illegal bargain.
Most jurisdictions which have ruled on this question have also rejected the per se test (see, Schoonover v State, 218 Kan 377, 543 P2d 881; Downs v State, 453 So 2d 1102 [Fla]; State v Labonville, 126 NH 451, 492 A2d 1376; see contra, People v Meyers, 46 Ill 2d 149, 263 NE2d 81).
The weight of authority and sound analytical and policy considerations support a rule requiring fact-finding courts to evaluate the specific impact which the contingent fee arrangement might have on the meaningfulness of counsel’s representation rather than a per se rule. Defendant is entitled to effective and meaningful representation based on a fair test, not on a blind windfall triggered by his own conduct.
Accordingly, the order of the Appellate Division should be reversed and the case should be remitted to that court for consideration of all issues not reached on appeal to that court and such further proceedings, if any, as may be appropriate.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.