Richard **WINKLER**, Petitioner–Appellant,

v.

John **KEANE**, Superintendent, Sing Sing Correctional Facility, Respondent–Appellee.

No. 1642, Docket 93–2164.

United States Court of Appeals, Second Circuit.

Argued June 7, 1993.

Decided Oct. 15, 1993.

Diane E. Selker, Asst. Dist. Atty., White Plains, NY (Carl A. Vergari, Dist. Atty. of Westchester County, Richard E. Weill, Second Deputy Dist. Atty., of counsel), for respondent-appellee.

Robert N. Isseks, Goshen, NY (Alex Smith, Middletown, NY, of counsel), for petitioner-appellant.

Before: OAKES, WALKER and WOOD, Jr.,* Circuit Judges.

WALKER, Circuit Judge:

Petitioner Richard Winkler appeals from a judgment of the United States District Court for the Southern District of New York (Gerard L. Goettel, *Judge*), dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. 812 F.Supp. 426 (S.D.N.Y. 1993). The issue presented by this appeal is whether a contingency fee agreement between a criminal defendant and his attorney

---

* Honorable Harlington Wood, Jr. of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

creates a conflict of interest for the attorney resulting in a violation of the defendant's Sixth Amendment right to effective assistance of counsel.

## BACKGROUND

In the early morning hours of August 2, 1980, after snorting cocaine and smoking marijuana, petitioner Winkler, his co-defendant, Merrill Williams, and Robert Gruber drove to Winkler's home. Williams and Winkler entered the house, where Williams shot and killed Winkler's father with a .22 caliber rifle. After Winkler and Williams returned to the car, Winkler told Gruber, "you don't know anything" and then asked Williams, "what do you want?". Williams indicated that he wanted $10,000, and Winkler replied, "You can have anything but my car." On October 24, 1980, Winkler and Williams were indicted for second degree murder and criminal possession of a weapon.

Winkler's family retained Robert A. Hufjay, Esq. to defend Winkler. Hufjay entered into a contingent fee arrangement with Winkler's mother, Lanie Sattler, and grandmother, Annie Winkler, subject to Winkler's signature, that provided in relevant part:

FIRST: The fee for legal representation shall be paid as follows:

(a) $2,000.00 on execution hereof, receipt of which is hereby acknowledged;

(b) $18,000.00 to be paid by ANNIE WINKLER from a bequest to be received from the Estate of Irving Winkler, at such time as said bequest is received.

SECOND: It is agreed that any disbursements for investigation or psychiatric examinations, etc., shall be in addition to the above fees.

\* \* \* \* \* \*

FOURTH: ANNIE WINKLER has been advised and understands that in the event that RICHARD WINKLER is convicted in Westchester County Court, that she would stand to inherit the entire estate of Irving Winkler. . . .

\* \* \* \* \* \*

SIXTH: It is understood and agreed, subject to the approval of RICHARD WINKLER that in the event RICHARD WINKLER is acquitted or found not guilty by reason of insanity, or some other legal reasons, and inherits from the Estate of Irving Winkler, that RICHARD WINKLER shall pay, as additional legal fees, the sum of $15,000.000.

Hufjay visited Winkler at the Westchester County Jail and presented the retainer agreement to him for signature. Winkler crossed out the "$15,000" set forth in paragraph "SIXTH," inserted "$25,000" in its place, and signed the agreement. Hufjay represented Winkler throughout the trial in Westchester County Court which ended when the jury found him guilty of murder in the second degree in violation of § 125.25 of New York State Penal Law. On October 30, 1981, Winkler was sentenced to 25 years to life imprisonment, which he is currently serving.

After his conviction and sentencing, Winkler moved collaterally in Westchester County to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10, on the ground the contingency fee agreement he entered into with Hufjay denied him his Sixth Amendment right to effective assistance of counsel.

The motion was denied without a hearing, *People v. Winkler,* Indictment No. 80–1085, slip. op. at 8 (Westchester County Ct. July 13, 1984). The court held that it was unnecessary to pass upon the legality of the agreement since Winkler received effective assistance of counsel. *Id.* at 4, 7–8. The Appellate Division, Second Department, reversed and vacated Winkler's conviction, holding that the contingency fee agreement in this case gave rise to a *per se* Sixth Amendment violation. *People v. Winkler,* 128 A.D.2d 153, 515 N.Y.S.2d 488 (2d Dep't 1987).

The New York Court of Appeals reversed. The court concluded that a denial of effective assistance of counsel occurs only if the defendant can establish that "a contingent fee agreement . . . affected the manner in which his attorney conducted the defense prejudicially to the defendant." *People v. Winkler,* 71 N.Y.2d 592, 597, 528 N.Y.S.2d 360, 362–63, 523 N.E.2d 485, 487 (1988). On remand, the Appellate Division again vacated the conviction, on the ground that Winkler had satisfied his burden of showing that the contin-

gency fee agreement had a prejudicial impact on counsel's representation. *People v. Winkler*, 144 A.D.2d 404, 533 N.Y.S.2d 913 (2d Dep't 1988). The Court of Appeals again reversed, and ordered the Appellate Division to remand the case to the County Court to hold a hearing. *People v. Winkler*, 74 N.Y.2d 704, 706, 543 N.Y.S.2d 380, 381, 541 N.E.2d 409, 410 (1989).

In July 1990, after the hearing, the County Court found that "there is no reason to believe [trial counsel's] representation of the defendant would have been any different if a proper fee arrangement had been utilized." *People v. Winkler*, Indictment No. 1085–80, slip op. at 16 (July 20, 1990). Accordingly, the court found that Winkler failed to demonstrate that his Sixth Amendment rights were violated. This decision was affirmed by the Appellate Division, 179 A.D.2d 711, 578 N.Y.S.2d 582 (2d Dep't 1992), and leave to appeal to the Court of Appeals was denied, 80 N.Y.2d 840, 587 N.Y.S.2d 924, 600 N.E.2d 651 (1992).

On August 4, 1992, Winkler filed the instant petition pursuant to 28 U.S.C. § 2254 in the District Court for the Southern District of New York (Goettel, *J.*). In denying the petition without a hearing, the district court held that the existence of a contingency fee agreement in a criminal case does not amount to a *per se* violation of Winkler's Sixth Amendment right to counsel as set forth by *Solina v. United States*, 709 F.2d 160 (2d Cir.1983) (Friendly, *J.*), and affirmed the state court's findings that counsel's representation of Winkler was not adversely affected by the contingency fee arrangement. 812 F.Supp. 426, 431 (S.D.N.Y.1993).

The district court issued a certificate of probable cause and this appeal followed.

## DISCUSSION

Winkler argues that his counsel had an actual conflict of interest giving rise to a *per se* violation of his Sixth Amendment right to effective assistance of counsel, in accordance with our decision in *Solina*, and, alternatively, that the actual conflict adversely affected his counsel's representation. While we agree that the contingency arrangement at issue in this case created an actual conflict of interest, we hold that it did not constitute a *per se* violation of Winkler's Sixth Amendment rights. Since there is no basis for disturbing the state court's finding that Winkler was not adversely affected by his counsel's representation, we affirm the judgment of the district court denying the petition.

### I. *Defense Counsel's Conflict of Interest*

[redacted] Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), if a defendant establishes that her attorney had a potential conflict of interest, in order to prove that the conflict resulted in a violation of her Sixth Amendment right to effective assistance of counsel, she must demonstrate prejudice. However, prejudice is presumed when a defendant establishes that her attorney had an actual conflict of interest that adversely affected the attorney's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *United States v. Jones*, 900 F.2d 512, 519 (2d Cir.), *cert. denied*, 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990).

[redacted] An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests "diverge with respect to a material factual or legal issue or to a course of action." *Cuyler*, 446 U.S. at 356 n. 3, 100 S.Ct. at 1722 n. 3; *see, e.g., United States v. McLain*, 823 F.2d 1457, 1463–64 (11th Cir.1987) (actual conflict when counsel, unbeknownst to defendant, had been under investigation for bribery); *United States v. Ellison*, 798 F.2d 1102, 1106–08 (7th Cir.1986) (actual conflict between lawyer and client when pursuit of client's interests would lead to evidence of attorney's malpractice), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987).

[redacted] Winkler argues that the contingency fee created an actual conflict of interest for trial counsel because Winkler's interests in effective representation were pitted against trial counsel's monetary interest. We agree. The contingency fee agreement in this case provided trial counsel with an extra $25,000 only if Winkler was acquitted or otherwise not found guilty. Thus, trial counsel had a

disincentive to seek a plea agreement, or to put forth mitigating defenses that would result in conviction of a lesser included offense. Plainly the contingency fee agreement created an actual conflict of interest.

The Government argues that following *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 633 n. 10, 109 S.Ct. 2646, 2656 n. 10, 105 L.Ed.2d 528 (1989), the *Strickland* prejudice standard, and not *Cuyler*'s "adverse effect" standard, applies to contingency fee cases. The Government misreads the case. In *Caplin & Drysdale,* the issue was whether the federal forfeiture statute violates criminal defendants' Sixth Amendment rights. The petitioner in that case argued, *inter alia,* that the forfeiture statute was unconstitutional because it might cause a lawyer representing a person facing asset forfeiture to accept a plea agreement contrary to the client's interests that did not entail forfeiture in order to ensure that the lawyer's fee is paid. The Court rejected the argument, stating: "such a strategy would surely constitute ineffective assistance of counsel. We see no reason why our cases such as *Strickland v. Washington* . . . are inadequate to deal with any such ineffectiveness when it arises." *Id.* The reference to "our cases such as *Strickland* " in no way undercuts a holding that *Cuyler* 's conflict of interest standard applies to contingency fee cases. Rather, the Court's statement does no more than make clear that its Sixth Amendment jurisprudence, including *Cuyler,* applies to contingency fee cases.

■ Winkler argues that the *per se* rule of this circuit applies in this case, so that he need not prove that the conflict adversely affected his lawyer's performance, as required by *Cuyler. See Strouse v. Leonardo,* 928 F.2d 548, 555 (2d Cir.1991). Without doubt, trial counsel's acceptance of the contingency fee agreement for representing a criminal defendant is highly unethical and deserves the strongest condemnation. However, the *per se* rule applies only when there is an "actual or constructive denial of the assistance of counsel altogether." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. And, our cases hold that such a denial arises in only two limited circumstances: where

defendant's counsel was unlicensed, and when the attorney has engaged in the defendant's crimes. *See Bellamy v. Cogdell,* 974 F.2d 302, 306 (2d Cir.1992) (in banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1383, 122 L.Ed.2d 759 (1993); *see also United States v. Novak,* 903 F.2d 883, 890 (2d Cir.1990) ("unlicensed" counsel); *United States v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984) (implicated in crimes); *Solina,* 709 F.2d at 168–69 ("unlicensed" counsel). A contingency fee between defense counsel and defendant, however inappropriate and unethical, falls into neither category and thus the *per se* rule does not apply. Accordingly, to prove a Sixth Amendment violation, Winkler must meet the *Cuyler* standard.

## II. *Whether Winkler's Representation was Adversely Affected*

■ Whether a defendant's representation was constitutionally inadequate is a mixed question of law and fact and thus we exercise *de novo* review. *Cuyler,* 446 U.S. at 342, 100 S.Ct. at 1715. In contrast to our conclusion that Winkler's attorney had an actual conflict of interest, the New York Court of Appeals determined that the fee arrangement in this case gave rise to a "potential conflict of interest" which the defendant was required to show "adversely and prejudicially affected the quality of representation" he received. 71 N.Y.2d at 598, 523 N.E.2d at 488, 528 N.Y.S.2d at 363. Although we take a different view of the applicable rule, we still grant the state court's factual findings deference under 28 U.S.C. § 2254(d). *See Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

■ Winkler argues that the record establishes that trial counsel, ignoring his client's best interests, forged an "all or nothing" trial strategy in order to obtain his $25,000 "bonus" fee. He contends that trial counsel's conflict resulted in his failure to investigate Winkler's psychiatric history and drug use, his failure to explore plea bargaining options prior to trial, and his general passivity in allowing Winkler, an eighteen-year old youth, "adamant[ly]" to claim innocence in the face of significant evidence to the contrary rather

than seeking a conviction of a lesser included offense.

To demonstrate adverse effect, a defendant must establish that an "actual lapse in representation," *Cuyler*, 446 U.S. at 336, 100 S.Ct. at 1711, resulted from the conflict. In *United States v. Iorizzo*, 786 F.2d 52, 58 (2d Cir.1986), we held that trial counsel had an actual conflict of interest because he had represented the government's key witness in a prior case. The lapse in representation occurred when trial counsel "abandoned his cross-examination of the government's key witness as to prior testimony" because of his conflict of interest. *Id.* And, in *Camera v. Fogg*, 658 F.2d 80, 88 (2d Cir.), *cert. denied*, 454 U.S. 1129, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981), we held that the two defendants, the Cameras, established an actual conflict that adversely affected their representation when trial counsel jointly represented both of them, and a co-defendant, and failed to explore plea bargains and to raise a duress defense for the Cameras because to do so would have harmed the co-defendant's interests.

Similarly, Winkler argues that he was adversely affected by trial counsel's failure to take certain actions. In *United States v. Gambino*, 864 F.2d 1064, 1071 (3rd Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 566 (1989), the Third Circuit adopted a helpful test previously established in the First Circuit, and held that, in order to prove adverse effect on the basis of what an attorney failed to do,

> [a defendant first] must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. He need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.

*Id.*, at 1070 (quoting *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir.1985)). Following this test, we must consider whether either of the two defense strategies Winkler argues his trial counsel failed to take were viable alternatives, and whether trial counsel chose not to undertake them because of his conflict.

Winkler first submits that trial counsel failed to initiate or engage in plea bargaining. Although the state court's findings indicate that in this alleged contract murder case the prosecution would have been highly unlikely to accept a plea agreement, Winkler need not show that a strategy would have been successful, only that it "possessed sufficient substance to be a viable alternative." *Gambino*, 864 F.2d at 1070. Even if it is likely to be unsuccessful, the negotiation of a plea bargain in a case in which the evidence is strongly against a defendant is a viable alternative.

However, Winkler's contention that trial counsel chose not to explore plea bargain alternatives because of his interest in the $25,000 "bonus" flies in the face of the state court's findings after the hearing on Winkler's § CPL 440.10 motion. The court found credible trial counsel's testimony that "defendant specifically advised him that as he was totally innocent, he was not interested in pleading to a manslaughter count even if it were offered." Moreover, the state court found that immediately before trial when the trial judge inquired whether Winkler would be interested in the minimum sentence for murder, fifteen years to life, the defendant rejected such a disposition. The court discredited the testimony of Winkler's mother, Lanie Sattler, that during the trial Winkler passed her a note indicating that he was willing to plead to a lesser charge. The state court noted that Sattler did not produce the note, no one else saw the note being passed or the note itself, and "in the entire post-trial history of the case no reference has ever been made to such a note." The state court's factual findings on this score are reasonable, and we accord them deference in concluding that trial counsel did not pursue a plea bargain because Winkler rejected this path, not because of trial counsel's monetary interest in the outcome.

Second, Winkler argues that trial counsel should have developed "an intoxication defense" to the second degree murder charge, and that his failure to mount this defense was motivated by his pecuniary interest in

total acquittal. Intoxication alone is not a defense to a murder charge, but, under New York law, a jury may find that a defendant was too intoxicated to form the specific intent to cause death. N.Y.Penal Law §§ 15.25, 125.25. Given that Winkler had snorted cocaine and smoked marijuana before the fatal event, this strategy also has sufficient substance to provide a viable alternative defense.

Again, however, Winkler's argument that his attorney failed to proffer this defense due to the conflict is controverted by the state court's findings. Winkler told trial counsel and testified at trial to the following story: after using drugs, he and the other two men drove to Winkler's house so that Winkler could repay Williams. Gruber stayed in the car while Winkler and Williams went inside. Winkler gave Williams $50, but Williams got angry because he was owed $100. Williams then demanded a rifle he loaned to Winkler a few days before. While looking around the house for more money, Williams went into Winkler's father's room, and Winkler heard two shots. Williams emerged from the room with money, and threatened to kill Winkler and his mother if Winkler said anything. According to trial counsel, Winkler remained adamant throughout the proceedings and at trial that this version of the facts was correct, and that he was totally innocent.

Trial counsel testified that prior to Winkler's testimony, trial counsel discussed with him the possibility of arguing for a conviction of lesser charges, including manslaughter in the second degree on the basis of intoxication. Trial counsel testified that Winkler again asserted his innocence and did not want trial counsel to request charges for these offenses. Sattler acknowledged that trial counsel brought up the possibility of lesser charges, and that Winkler always insisted he was innocent. The state court found that Winkler was advised of the option of lesser charges, but rejected it, and sought an acquittal based on his version of the events. Moreover, trial counsel testified that although he was aware that Winkler had a history of drug use, and that Winkler had used drugs the night of the murder, he thought that Winkler's recollection of the events was "so precise and clear that he

could not have been impaired to the extent necessary to provide a viable defense...." The state court concluded that Winkler failed to establish that the fee arrangement caused trial counsel not to seek a conviction for lesser charges.

The state court found that "there is no reason to believe Mr. Hufjay's representation of the defendant would have been any different if a proper fee arrangement had been utilized." Because the state court's findings are supported by the record, and entitled to deference, we conclude that Winkler has failed to prove that trial counsel's representation was adversely affected by the conflict of interest. Thus, his Sixth Amendment right to counsel was not violated.

## CONCLUSION

The district court's denial of the § 2254 petition is affirmed.