101 F.3d 107
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Lawrence P. STROUSE, Jr., Petitioner-Appellant,
v.
Arthur A. LEONARDO, Sup't., Respondent-Appellee.
 No. 95-2179.
 United States Court of Appeals, Second Circuit.
 March 8, 1996.
 
 1
 E.D.N.Y.
 
 
 2
 AFFIRMED.
 
 
 3
 APPEARING FOR APPELLANT: Gregory L. Harris, Willkie, Farr & Gallagher, New York, NY.
 
 
 4
 APPEARING FOR APPELLEE: Emil Bricker, Assistant District Attorney, Queens County, Kew Gardens, NY.
 
 
 5
 Present MINER, JACOBS and CABRANES, JJ.
 
 SUMMARY ORDER
 
 6
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Eastern District of New York, it is hereby
 
 
 7
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 
 
 8
 This cause came on to be heard on the transcript of record and was argued by counsel.
 
 
 9
 Petitioner-appellant Lawrence P. Strouse, Jr. ("Strouse") appeals from a judgment of the United States District Court for the Eastern District of New York (Korman, J.), adopting the Report and Recommendation of the magistrate judge (Ross, J.), denying Strouse's 28 U.S.C. § 2254 petition for a writ of habeas corpus. The district court found that Strouse failed to prove that his counsel had represented him at trial under a conflict of interest.
 
 
 10
 On January 23, 1979, Nancy Strouse ("Mrs.Strouse") was murdered in her home in Queens. Strouse, her son, was accused of arranging the murder. James Cally became trial counsel for Strouse. Cally also had represented Mrs. Strouse during her lifetime on various matters, including the preparation of her will in April of 1976. This will named Strouse as the primary executor and beneficiary, and designated Cally as the alternate executor in the event that Strouse predeceased his mother.
 
 
 11
 On January 31, 1979, shortly after becoming Strouse's lawyer, Cally wrote a letter to the funeral home arranging Mrs. Strouse's burial, indicating that he would not be advising on legal matters in connection with Mrs. Strouse's estate. The letter stated that Harry Bigman, an attorney representing Strouse's father, Lawrence Strouse, Sr., and Strouse's brother, Peter Gregory Strouse, would be handling such matters. The record does not indicate that Cally performed any services in connection with Mrs. Strouse's estate during Strouse's trial.
 
 
 12
 In June of 1980, Strouse's trial commenced in New York State Supreme Court, Queens County. On June 23rd, the jury returned a verdict against Strouse on two counts of murder in the second degree, burglary in the first degree, and conspiracy to commit murder in the second and fourth degrees. On July 10, 1980, in a letter to Cally, Bigman turned over Mrs. Strouse's estate assets and documents to Cally. Bigman stated that he had "received word from [Peter Gregory] Strouse directing me to forward all documentation on this file to you for appropriate action."
 
 
 13
 On April 8, 1981, Cally petitioned the Surrogate's Court to appoint him as executor of Mrs. Strouse's estate. On April 30, 1981, Surrogate Judge Louis Laurino denied Cally's petition, finding that Cally was ineligible to become executor because the will named him as successor executor only on the condition that Strouse predeceased his mother. Ultimately, Peter Gregory Strouse was appointed administrator of the estate.
 
 
 14
 On March 10, 1988, Strouse filed a petition for a writ of habeas corpus in the district court. He alleged, inter alia, that he had been denied his Sixth Amendment right to effective assistance of counsel because his trial counsel had labored under a conflict of interest. Specifically, Strouse contended that Cally had hoped to become the executor of Mrs. Strouse's estate upon Strouse's conviction and thus obtain executor fees. The district court denied Strouse's appeal without holding an evidentiary hearing on Strouse's claims. Strouse v. Leonardo, 715 F.Supp. 1170 (E.D.N.Y.1989).
 
 
 15
 On appeal, we stated that "[i]t is well established that the Sixth Amendment right to effective assistance of counsel carries with it a correlative right to representation that is free from conflicts of interest." Strouse v. Leonardo, 928 F.2d 548, 552 (2d Cir.1991) (quotation omitted). We noted that, "[i]n order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Id. (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)). To demonstrate an actual conflict of interest, we held that Strouse would have to show "some objective basis for the claim; it is not enough in determining the existence of an actual conflict of interest merely to assess the attorney's state of mind." Id. at 553.
 
 
 16
 Because we could not "say on the basis of [the] record that Cally, either objectively or subjectively, labored under an actual conflict of interest," id., we remanded this case to the district court to hold an evidentiary hearing to determine whether an actual conflict existed. The parties were instructed to "develop the circumstances surrounding Cally's application for appointment as executor in greater detail." Id. at 554. We also directed the district court to "hear evidence on Cally's fee arrangement with Strouse." Id. at 555. We observed that if "Cally could not have reasonably expected to be paid unless Strouse was acquitted, then it is unlikely that Cally labored under a conflict of interest because of his desire to obtain executor fees." Id.
 
 
 17
 Thereafter, an evidentiary hearing was conducted by the magistrate judge. After reviewing documentary evidence and testimony,[1] the magistrate judge found that Cally had not labored under an actual conflict of interest during Strouse's trial, and recommended that Strouse's petition be denied. In a Memorandum and Order dated February 15, 1995, the district court adopted the Report and Recommendation of the magistrate judge and dismissed Strouse's petition. Judgment was entered on February 23, 1995. This appeal followed.
 
 
 18
 Strouse contends that the evidence adduced at the evidentiary hearing shows that Cally labored under an actual conflict of interest during Strouse's trial. Our de novo review of the district court's decision, see Winkler v. Keane, 7 F.3d 304, 308 (2d Cir.1993), cert. denied, 114 S.Ct. 1407 (1994), leads to our conclusion that Strouse's contention is without merit.
 
 
 19
 We think that Strouse presented insufficient evidence to show that it was objectively reasonable for Cally to have believed that the will would allow him to serve as executor. The will called for the appointment of Cally only if Strouse predeceased his mother. We previously noted that the authorities cited by Strouse did not support his claim that it would have been objectively reasonable for Cally to believe that he would be appointed executor. Strouse, 928 F.2d at 553-54. Robert Benjamin, a New York trusts and estates practitioner, testified that the language in Mrs. Strouse's will was atypical, and that a court would have had discretion in determining whether Cally would qualify as alternate executor. However, Judge Laurino, the former Surrogate's Court judge who denied Cally's petition to be named executor, testified that "[t]here was no basis for granting the petition."
 
 
 20
 We also believe that Strouse presented insufficient evidence to prove that Cally believed, at the time of Strouse's trial, that Cally would become executor and that Strouse's conviction would be the "triggering event" for the appointment. The evidence demonstrates that Cally did not perform legal services for any estate matters during Strouse's trial. In a letter dated January 31, 1979, Cally indicated that he had been "substituted" in all estate matters by Bigman, counsel for Peter Gregory Strouse. In fact, Strouse later complained in a November 30, 1981 letter that Cally had shown a "lack of concern and complete negligence in handling the affairs of the estate.... He displayed no interest what-so-ever prior to my trial and has, evidently, shown very little ever since." Instead, the evidence indicates that Cally's pursuit of the executorship was instigated following Strouse's conviction, when, on July 10, 1980, Bigman sent Cally the letter turning over estate assets and documents to him. Other documents referred to by Strouse are insufficient to prove that Cally intended, at any time during Strouse's trial, to pursue the executorship during Strouse's trial.
 
 
 21
 Finally, we think that the evidence of Cally's fee arrangement with Strouse indicates that Cally was motivated to secure Strouse's acquittal. Evidence at the hearing indicated that Cally's trial fees were approximately $12,500.[2] Evidence also showed that Strouse would have been unable to pay these fees, unless he was acquitted and thus able to inherit from his mother's estate. Although there was a possibility that Strouse would have been unable to inherit from the estate even if acquitted, Cally would have believed that any opportunity for Strouse to inherit would be completely foreclosed in the event of a conviction. Nonetheless, Strouse argues that Cally expected to benefit financially following a conviction of Strouse as a result of receiving compensation as executor of Mrs. Strouse's estate. However, at that time, under N.Y. Surr. Ct. Proc. Act § 2307, Cally stood only to earn an executor's commission of up to $4000. Thus, the commission to be received following a conviction of Strouse is outweighed by the legal fees in the sum of $12,500 to be received in the event of an acquittal.
 
 
 
 [1]
 Cally did not testify at the hearing, having died in 1989
 
 
 [2]
 Strouse argues that a letter in which Cally described his trial fees should have been excluded as hearsay. However, Strouse did not object to its admission at the hearing, and thus it was properly considered. See United States v. Check, 582 F.2d 668, 677 n. 28 (2d Cir.1978)